was legally cognizable: Lancaster v. Frescoln, 192 Pa. 452. In overruling the motion for judgment n. o. v., the learned trial judge states the whole case as follows:

"It is argued that plaintiff here had deprived defendants of the opportunity of purchasing more goods (by ending the contract) and thus preventing the earned discounts from being set off against future purchases. But, if that be a reason why defendants may now set-off their claim, it was an equally good one why they should have recovered in their action. All their rights to the claim for discounts were staked on the result of that case, and they must accept the result of the judgment entered against them."

It is unnecessary to consider the other questions raised on this appeal. The fact that the plaintiff's claim had once been the subject of litigation and judicial determination is conclusive of the case.

Judgment affirmed.

---

# Pittsburgh, Appellant, *v.* Grenet.

*Cities of the second class—Collector of delinquent taxes—Ordinances—Nonsuit—Act of June 20, 1901, P. L. 586—Act of May 8, 1909, P. L. 477.*

1. Under the provisions of the Act of June 20, 1901, P. L. 586, providing that the collector of delinquent taxes in cities of the second class shall be the head of the department of delinquent taxes and that "the head of this department shall receive such compensation, either by stated salary or by fees, as may be fixed by councils" and the provisions of the Act of May 8, 1909, P. L. 477, providing that the collector of delinquent taxes in such cities "shall receive such compensation, either by a stated salary or by fees, as may be fixed by councils" the councils of the City of Pittsburgh have power to fix the compensation of the collector of delinquent taxes by a percentage of the penalty imposed upon delinquent taxpayers.

2. In an action by the City of Pittsburgh against the collector of delinquent taxes to recover certain moneys alleged to have been

illegally retained by him, it appeared by the evidence that the amount so retained by the defendant was the correct amount of his fees or compensation for the collection of taxes based upon the percentage of a penalty imposed upon delinquents as fixed by proper ordinances of the city. *Held,* that a nonsuit was properly entered.

Argued November 3, 1913. Appeal, No. 27, Oct. T., 1913, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1912, No. 1879, of nonsuit in case of The City of Pittsburgh v. Samuel J. Grenet and the National Surety Company of New York. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit by a city against a collector of delinquent taxes and his surety to recover moneys retained.

The facts of the case appear in Pittsburgh v. Grenet, et al., 238 Pa. 567.

The court entered a compulsory nonsuit. Upon a motion to take off the nonsuit, SHAFER, J., filed the following opinion:

The plaintiff put in evidence allegations of the affidavit of claim not denied by the affidavit of defense, and an agreement of counsel as to the facts, from which it appeared that the defendant is, and for sometime has been, collector of delinquent taxes of the City of Pittsburgh, and that as such he received certain moneys amounting to over fifty thousand dollars, which he did not pay over to the City of Pittsburgh, but retained upon the claim that they were his fees allowed by law. The ordinances of the City of Pittsburgh relating to the matter were also put in evidence, copies of them being annexed to the affidavit of claim. It appeared by the evidence that the amount so retained by the defendant was the correct amount of his fees or compensation for the collection of taxes as provided by these ordinances. The plaintiff having rested its case, upon motion of the defendant a judgment of compulsory nonsuit was entered, which the plaintiff now moves the court to take off.

As we understand it, the only question arising upon the record is whether or not under the law applicable to the case the plaintiff was bound to pay over the sum of money in question to the City of Pittsburgh, or had a right to retain the same for his own use.

This case was before this court on a rule for judgment for want of a sufficient affidavit of defense, and upon the discharge of that rule was appealed to the Supreme Court, the case being reported in volume 238, page 567, where the judgment was affirmed upon the opinion of this court. The only difference between the case now presented and that which was before the court upon that rule seems to us to be that in the affidavit of defense an audit by the controller of the City of Pittsburgh was alleged as a defense, which of course does not appear in the evidence here. In that case, however, the court proceeded to discuss the question of the right of the city to claim the money sued for from the defendant without regard to the tribunal by which that right was to be determined, and came to the conclusion "that the provision in the Act of June 20, 1901, and the Act of May 8, 1909, empowered the councils of the City of Pittsburgh to fix the compensation of the collector of delinquent taxes by a percentage of the penalty imposed upon delinquents," and that therefore the ordinances above referred to were valid, and the judgment was affirmed upon the opinion containing this conclusion.

We are therefore of opinion that the judgment of nonsuit was properly entered, and the motion to take off the same is therefore refused.

To which counsel for plaintiff excepts, and thereupon bill sealed.

*Error assigned* was the refusal to take off the compulsory nonsuit.

*William A. Stone,* for appellant.

*W. B. Rodgers,* with him *W. W. Stoner,* for appellees.

PER CURIAM, January 5, 1914:

The judgment is affirmed on the opinion of Judge SHAFER refusing the motion to take off the nonsuit.

---

# Craig, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Railroads—Contributory negligence — "Stop, look and listen."*

1. Where a stop has been made by one about to cross the tracks of a steam railroad at the usual place of stopping, from which a view of the tracks can be had, it is generally a question for the jury whether under the facts of the particular case there was negligence in not stopping longer or at another and better place, but stopping where one cannot see is little, if any, better than not stopping at all and is not a compliance in good faith with the unbending rule that a traveler before attempting to cross must stop, look and listen, and if necessary in order to see, advance to or onto the tracks.

2. In an action against a railroad company to recover damages for personal injuries, it appeared that the plaintiff was driving an automobile and at a grade crossing of the defendant's road, where there were five tracks, stopped about fifteen feet from the first rail, where his view to the right in the direction from which the train came was obstructed by a watchman's house five feet square, which stood six feet from the tracks. From this place his view was limited to one hundred and fifty feet on the farthest track, and was much less on the near tracks. The tracks were straight and from any point between them and the watchman's house the view was unobstructed for half a mile. Without making any further effort to see if a train was coming, plaintiff started over the crossing and was hit on the fifth track by a freight train running fifteen or twenty miles an hour with the headlight of the engine burning. The night was ordinarily dark, but it was evident, from the plaintiff's testimony, that he could have seen the headlight if he had looked when he was on a line with the front of the watchman's house. *Held,* that judgment non obstante veredicto was properly entered for the defendant.